Robert HASH and Gerlene Hash,
et al., Plaintiffs,

v.

UNITED STATES of America,
Defendant.

No. CV–99–324–S–MHW.

United States District Court,
D. Idaho.

Aug. 18, 2006.

Cecilia Fex, David A. Cohen, Nels J. Ackerson, James R. Baarda, The Ackerson Group, Washington, DC, Lary C. Walker, Weiser, ID, for Plaintiffs.

Kristine S. Tardiff, U.S. Dept. of Justice, Environmental & Natural Resources Division, Concord, NH, for Defendant.

## MEMORANDUM DECISION

WILLIAMS, United States Magistrate Judge.

Pending before the Court are the following motions: Defendant's Motion for Partial Summary Judgment regarding Categories 5, 6, 8, 14, and 15 (Docket No. 122); Plaintiffs' Cross Motion for Partial Summary Judgment regarding Categories 5, 6, and 8 (Docket No. 127); Plaintiffs' Motion for Reconsideration of Memorandum Decision (Docket No. 135); and Defendant's Motion for Clarification Regarding Proceedings on Remand regarding Categories 10, 12, and 13 (Docket No. 145).

Having considered the record, the briefs of the parties, and oral argument, and being otherwise fully informed, the Court enters the following Order.

## BACKGROUND

As previously set forth in its Memorandum Decision (Docket No. 88), Plaintiffs each own an interest in land that once constituted part of a railroad corridor operated by the Pacific and Idaho Northern Railroad Company ("Pacific & Idaho" or "Railroad") between Weiser and New Meadows, Idaho, that has since been converted to interim use as a recreational trail (the "Weiser Trail") by order of the Interstate Commerce Commission ("ICC") under the provisions of the National Trails System Act, 16 U.S.C. § 1241, et seq., (the "Rails–to–Trails Act"). Plaintiffs alleged that conversion of their property that once constituted part of a railroad corridor for interim use as a recreational trail constituted a taking for which they are entitled

to just compensation under the Fifth Amendment.

The parcels were conveyed to the Railroad under various forms of documents arguably resulting in the Railroad's acquisition of various forms of property interests. However, Plaintiffs maintain that despite the form of conveyance, the Railroad acquired only an easement for railroad purposes that would have been terminated but for the Rails–to–Trails Act. As stated in the Court's decision, "[t]he briefing presently before the Court is limited to an examination of the original conveyances to the Pacific & Idaho for the purpose of determining the nature of the property interest acquired by Pacific & Idaho at the time of conveyance and the nature of the property interest, if any, retained by the original grantors." *Mem. Dec.* at 2 (Docket No. 88).

In order to determine the nature of the property interest acquired by the Railroad and the nature of the property interest, if any, retained by the original grantors, this Court previously examined the original conveyances to the Railroad, categorized them by stipulation of the parties according to the methods by which the Railroad obtained its rights to use the corridor, and entered its decision setting forth its determination with regard to each category. In reaching its decision, the Court was cognizant of the fact that deeds usually contain several distinct parts: (1) the granting clause, which is found in the premises of the deed; (2) the consideration for the conveyance; (3) the descriptive clause, which generally follows the granting clause and provides a more detailed description of the property conveyed; and (4) the habendum clause. *See* 23 Am.Jur.2d Deeds §§ 18–24 (1983). The Court was also aware in examining each of these clauses,

that the presence or absence of specific terms, such as "right of way" or "as long as," would be important in determining the intent of the parties.

The Court ruled in favor of Defendant as to Categories 1, 5, 6, 7, 8, 9, 10, 12, 13, 14, and 15 finding that the Railroad acquired fee title. Plaintiffs thereafter appealed those portions of the Court's decision pertaining to Categories 1, 5, 6, 8, 14, and 15 to the Federal Circuit Court of Appeals which reversed in part, vacated in part, and remanded for further proceedings. *See Hash v. United States*, 403 F.3d 1308 (Fed.Cir.2005) (Docket No. 116).

## DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT CATEGORIES 5, 6, 8, 14, AND 15

The Court had previously found that the deeds in Categories 5, 6, 8, and 14 conveyed fee title to the Railroad rather than an easement. The Court's Memorandum Decision did not address Category 15, but the Federal Circuit decision included it with Categories 5, 6, and 8. The Federal Circuit remanded these categories to allow this Court to consider whether the Idaho Supreme Court decision in *Neider v. Shaw*, 138 Idaho 503, 65 P.3d 525 (2003), issued after this Court's initial decision, would change its analysis that the deeds in those categories conveyed fee title to the Railroad.[1]

Defendant identifies the threshold question in this case as whether Plaintiffs have an ownership interest in the right of way entitling them to compensation. Defendant contends that each of the representative deeds in question is unambiguous and conveyed fee simple title to the Railroad. Furthermore, Defendant contends that *Neider*, while reaffirming long-established

---

1. As indicated in the parties' briefing, Plaintiffs do not seek review of Category 14, and the deeds in Category 15 overlap with the deeds in Categories 5, 6, and 8 and need not be considered separately.

principles of deed interpretation under Idaho law, is not controlling because the deed at issue in *Neider* is substantively distinguishable from the deeds at issue here.

The *Neider* court neatly summarized Idaho law with respect to construing documents conveying an interest in land:

> When construing an instrument that conveys an interest in land, courts seek to give effect to the intent of the parties to the transaction. *Daugharty v. Post Falls Highway Dist.*, 134 Idaho 731, 735, 9 P.3d 534, 538 (2000) (citing *Gardner v. Fliegel*, 92 Idaho 767, 770, 450 P.2d 990, 993 (1969)). The intent of the parties is determined by viewing the conveyance instrument as a whole. *Id.* (citing *Doyle v. Ortega*, 125 Idaho 458, 461, 872 P.2d 721, 724 (1994)). Interpretation of an unambiguous conveyance instrument is a question of law to be settled by its plain language. *City of Kellogg v. Mission Mtn. Interests Ltd., Co.*, 135 Idaho 239, 243, 16 P.3d 915, 919 (2000). Interpretation of an ambiguous deed is a question of fact to be settled by the language in the conveyance instrument and the facts and circumstances of the transaction. *Id.* Whether a deed is ambiguous is a question of law. *Id.* at 244, 16 P.3d at 920. Ambiguity exists only if language of the conveyance instrument is subject to conflicting interpretations. *Id.*

*Neider*, 65 P.3d at 530.

### A. *Neider* Decision

*Neider* involved a conveyance instrument to a railroad which used terms such as "grant," "bargain," and "sell" but which contained the following handwritten language:

> Provided: nevertheless that this deed is made for right of way, station, sidetrack and warehouse purposes. Should [the Railroad] fail to establish and maintain station and sidetrack, this deed shall be null and void and said land shall revert back to the said J. Fremont Bow and C.A. Bow, his wife, or their legal heirs.

*Neider*, 65 P.3d at 527. Based on that language, the Court concluded,

> In this case, a substantive provision of the conveyance instrument, in handwriting, grants a "right of way" to the Railroad, which this Court has identified as language that creates an easement. The conveyance instrument from the Bows to the Railroad granted an easement to the Railroad rather than a fee simple.

*Id.*

In making its determination that the instrument conveyed an easement rather than fee title, the Court relied on its prior holding in *C & G, Inc. v. Rule*, 135 Idaho 763, 25 P.3d 76 (2001). *C & G* involved two deeds containing granting and habendum clauses stating that the grantor, in exchange for consideration:

1. *Thomas Deed:*

[D]oes grant, sell and convey unto the said Idaho Northern Railway Company, Limited, the following described piece, parcel of land, to wit: A strip, piece or parcel of land one hundred feet in width, situated in the North West quarter (NW 1/4) of Section seventeen (17)....

To Have and to Hold, the said above described premises unto the said Idaho Northern Railway Company, Limited, its successors and assigns forever.

*Id.* at 78.

2. *Cheney Deed:*

[S.F. Chaney] does grant, sell and convey unto the said Idaho Northern Railway Company, Limited, the following described piece, parcel of land one hundred feet in width, situated in the West one half (W 1/2) of the Northeast quarter (NE 1/4)....

To have and to hold, the said above described premises unto the said Idaho

Northern Railway Company, Limited, its successors and assigns forever.

*Id.*

In *C & G*, the lower court had determined that the use of the words "Right of Way" on the cover page created an ambiguity although it ultimately ruled that the railroad had acquired fee title. The Idaho Supreme Court disagreed that an ambiguity existed and determined that the language on the cover sheet was merely descriptive of the strip of property being conveyed. It held that those words created no ambiguity because they were not in the granting or habendum clauses of the deeds. *Id.* at 79–80. In other words, that court found that the deeds conveyed fee simple title to the railroad.

### B. Application of *Neider* to Category 5 Deeds (Approximately 8 parcels)

■ One of the Category 5 deeds reads, in part, as follows:

[Grantors] do grant, bargain, sell, convey and confirm unto [Pacific & Idaho], and to its successors and assigns forever, all the following described real estate....

A perpetual right of way through, over, and across [described land] .... the said right of way so conveyed being fifty feet wide each side of the center line of the railway belonging to [Pacific & Idaho] as the same is now located, constructed and operated on the ground; said right of way being one hundred (100) feet wide along the entire route across said premises occupied and used by [Pacific & Idaho].

TOGETHER with all and singular the tenements, hereditaments and appurtenances thereunto belonging or in anywise appertaining, and the reversion and reversions, remainder and remainders, rents, issues and profits thereof, and all

estate, right, title and interest in and to the said property, as well in law as in equity, of the said [grantors].

TO HAVE AND TO HOLD, all and singular the above mentioned and described premises, together with the appurtenances, unto [Pacific & Idaho] and to its successors and assigns forever. And the [grantors] and their heirs, the said premises in the quiet and peaceable possession of [Pacific & Idaho] its successor and assigns, against the [grantors] and their heirs, and against all and every person and persons whomsoever, lawfully claiming or to claim the same, shall and will warrant and by these presents forever defend.

J.App. 13.[2]

Another sample deed for Category 5 reads, in part:

[Grantors] have granted, bargained and sold and by these presents do grant, bargain, sell, convey and confirm until [Pacific & Idaho], and to its successor and assigns forever, all the following described real estate....

A right of way one hundred feet in width being fifty feet on each side of the center line of the survey of [Pacific & Idaho] ... and [Pacific & Idaho] will also put a box across the road bed upon such right of way ... and will fence such right of way.

Together with all and singular the tenements, hereditaments and appurtenances thereunto belonging, or in anywise appertaining, and the reversion and reversions, remainder and remainders, rents, issues and profits thereof, and all estate, right, title and interest in and to the said property, as well in law as in equity, of said parties of the first part.

*Id.* at 14.

In *Neider*, the Idaho Supreme Court, citing *C &·G*, stated, "This Court, however,

---

**2.** J.App. refers to the Joint Appendix (Docket No. 82) filed on June 1, 2001.

recognized that use of the term right-of-way in the substantive portions of a conveyance instrument creates an easement. (Citation omitted)." *Neider,* 65 P.3d at 530. What did the *Neider* court mean when it said if the term "right of way" is used in the "substantive" portion of the deed an easement is created? With that broad statement, did the *Neider* court mean to hold that if the words "right of way" are *ever* used in *any* part of deed, then an easement is created? The Court does not believe the Idaho Supreme Court intended to articulate such a broad rule. The Court further believes that its ruling is tempered by the language in the deed that was before the Idaho Supreme Court in that case.

The Idaho Supreme Court itself has stated that its opinions "must be considered and construed in the light of the rule that they are authoritative only on the facts on which they are founded. General expressions must be taken in connection with the case in which those expressions are used. 'There is a pronounced line of demarcation between what is *said* in an opinion and what is *decided* by it.' (Citation omitted)." *Bashore v. Adolf,* 41 Idaho 84, 238 P. 534 (1925) (emphasis in original). Applying that directive, the Court finds it significant that the Idaho Supreme Court has not yet interpreted a deed containing the term "right of way" in the body of the deed with no other limiting language. As more thoroughly discussed below, *C & G* involved the use of the term on the cover sheet only, and *Neider* involved the use of the term in connection with clear language indicating that the grantees' rights (regardless of what they were) were to be terminated upon cessation of use of the property for railroad purposes.

 As noted earlier, deeds generally contain three important clauses: the granting clause, the habendum clause, and the descriptive clause. The granting clause is examined to determine the object of the conveyance. The habendum clause may modify or limit the grant, but does not defeat a clear, unambiguous grant. It is generally held that if there are any inconsistencies between the granting clause and the habendum clause, the granting clause will prevail because the granting clause is "the most dependable expression of the grantor's intention" and "is considered to be the very essence of the deed." *Long v. Horton,* 126 Ind.App. 651, 133 N.E.2d 568, 570–571 (1956). Finally, the descriptive clause provides a means for identification of the land being conveyed.

 The significance of the term "right of way" in a deed depends, in part, on where the term appears in the deed:

> The mere presence of the term "right of way" does not, in and of itself, indicate an intent to convey an easement. Rather, when appearing *outside of the granting clause,* the term is of limited value because it has two meanings. Right of way refers to 1) a right to cross over the land of another, an easement, and 2) the strip of land upon which a railroad is constructed. *Joy v. City of St. Louis,* 138 U.S. 1, 11 S.Ct. 243, 34 L.Ed. 843 (1891); (citation omitted); Black's Law Dictionary 191 (5th ed.1979) (stating that the "[t]erm 'right of way' sometimes is used to describe a right belonging to a party to pass over land of another, but it is also used to describe that strip of land upon which railroad companies construct their road bed, and, when so used, the term refers to the land itself, not the right of passage over it").

*Clark v. CSX Transportation, Inc.,* 737 N.E.2d 752, 758 (Ind.Ct.App.2000) (emphasis added).[3]

---

**3.** The Idaho Supreme Court in *C & G* repeatedly cited to the *Clark* decision.

With this general guidance, the Court will now turn to the actual deed at issue in the *Neider* case, because once it is examined, it becomes clearer what the Idaho Supreme Court was referring to as the substantive portions of a deed. First, the deed contained printed provisions, setting forth traditional language normally found in the granting and habendum clauses which would evidence an intent to convey a fee simple absolute title to the property to the railroad.

Second, the deed contained a handwritten description of the property to be conveyed. This descriptive clause in the deed did not mention "right of way." As discussed in *Clark,* many courts have struggled in construing the intent of the parties when "right of way" is contained in the descriptive clause of a deed since it can mean, as discussed in the *Clark* case, either an easement or a description of the land over which the railroad constructs its tracks. The Idaho Supreme Court was not confronted with this particular problem in the *Neider* case.

What the *Neider* deed did have was a separate handwritten sentence which modified the printed granting clause in the deed. Rather than conveying fee simple absolute title, this separate paragraph "unambiguously reflects the Bows' intent to convey only an easement to the Railroad." *Neider,* 65 P.3d at 530.

In a perfect world, the *Neider* deed would have had this handwritten sentence incorporated into the granting clause so that the granting clause would be appropriately modified to indicate that the grant was of an easement as opposed to a fee simple. While not as precisely set out as it could have been, the Idaho Supreme Court had no difficulty determining that the handwritten sentence was a substantive part of the deed and reflected the intent of the parties to create an easement,

without having to go into a detailed discussion that it modified the granting clause. Likewise, the unambiguous expression of intent in the *Neider* deed obviated the need for the Idaho Supreme Court to go into a detailed discussion of what constituted "substantive."

When considered in this context, the *Neider* decision broke no new ground, did not create any new rules regarding the construction of railroad deeds, and is consistent with its decision in *C & G.* In *C & G,* the Idaho Supreme Court had to address a different issue than presented in *Neider.* "Right of way" was contained on a cover sheet to the deed and the court had to determine the intent of the parties. A close reading of *C & G* reveals that the court did not state that the use of the term right-of-way in the *descriptive* portion of the deed would always create an easement since it could just be describing the nature of the land acquired by the railroad. In fact, it said that the right of way words were merely descriptive of the strip of property being conveyed. *Id.* at 80. Rather, the Supreme Court noted:

Accordingly, because the words "right of way" appear only on the cover pages of the Thomas and Chaney deeds *instead of being found in the granting or habendum clauses,* we hold that the use of the term "right of way" on the cover sheets merely describes generally the strip of property acquired by Idaho Northern and does not express a limitation of the title to the estate conveyed.

... What Galvin fails to note, however, is that the majority of these cases do not address the current situation involved here: where *there is no mention of the term "right of way" in either the granting or habendum clause,* nor any other language in the deeds that serves to

*limit the use of the land for the purpose of a railroad right of way.*

*C & G,* 25 P.3d at 80–81 (emphasis added).

In the Category 5 deeds, the words "right of way" do not appear in the granting or habendum clauses. They appear only in the descriptive clause. However, the appearance of the term is not necessarily determinative of intent to create an easement. As the court did in *Clark,* the court in *C & G* recognized that "right of way" can either limit the interest granted in a deed, in which case it would convey an easement, or it can be a phrase describing a parcel of land being conveyed to a railroad for railroad purposes. *Id.* at 80. In the latter sense, the term is "merely descriptive" of the use to which the land is being put. *Id.* Clearly, in the Category 5 deeds, the term is used in the descriptive sense as it is contained in the descriptive clause and contains no limitations regarding the use of the land.

Except for the fact that the Category 5 deeds contain the term "right-of-way" in the descriptive clause, the language in these deeds otherwise falls within the language of the *C & G* deeds and the conclusions as to the *C & G* deeds are applicable here:

> Although we recognize that a conflict exists among courts as to the interpretation of deeds purporting to convey land where there is also a reference to a "right of way," where the railroad deed does not contain language about its purpose or otherwise limiting the conveyance and conveys a definite parcel of land, courts consistently hold that "the deed will be construed to convey fee simple title." (Citations omitted.) Much of the conflict in the caselaw can be traced to the different meanings of the phrase "right of way." (Citations omitted.) On one hand "right of way" can serve "to qualify or limit the interest granted in a deed to the right to pass over a tract of land (an easement)." (Citation omitted.) On the other, the phrase can describe the parcel of land being conveyed to the railroad for the purpose of constructing its rail line. (Citation omitted.) Used in this manner, "right of way" is merely descriptive as to the use to which the land is being put and does not serve to limit or restrict the estate conveyed.

*Id.* at 80.

The Court is further convinced that the Category 5 deeds conveyed fee title after reviewing a case heavily cited in *C & G* regarding the different meanings of the term "right of way," an *en banc* decision by the Washington Supreme Court. *See Brown v. State,* 924 P.2d 908 (Wash.1996). *Brown* involved the interpretation of several railroad deeds, most of which were the statutory warranty form deed, some of which also had references to "rights of way." The Washington Supreme Court stated,

> The words "right of way" can have two purposes: (1) to qualify or limit the interest granted in a deed to the right to pass over a tract of land (an easement), or (2) to describe the strip of land being conveyed to a railroad for the purpose of constructing a railway. (Citations omitted.) Unlike *Swan, Veach,* and *Roeder,* where "right of way" was used in the granting or habendum clauses to qualify or limit the interest granted, *"right of way" in the deeds at issue here appears in either the legal description of the property* conveyed or in the portion of the deeds describing Milwaukee's obligations with respect to the property. The Eidal deed, for example, states:
>
>> Said Railway Company ... will permit a telephone wire and an electric light wire to cross its said right-of-way.... Before grading is begun Right of way fences shall be built....

Said Railway Company is to furnish such facilities for conducting water for irrigation and other purposes under its track and across its Right–of–Way as are reasonable and practicable....

Clerk's Papers (Brown) at 27. Used in this manner, "right of way" merely describes a strip of land acquired for rail lines; it does not qualify or limit the interest expressly conveyed in the granting and habendum clauses. To point out that the Eidal deed and others describe the property as right of way simply begs the question of what interest Milwaukee acquired, because a railroad can own rights of way in fee simple if that is what the deed conveys.

*Id.* at 914 (emphasis added).

The *Brown* decision also noted that the obligation to construct or maintain farm crossings or irrigation canals is consistent with the conveyance of fee simple title, with an easement back to the grantors to cross the land conveyed to the railroad. *Id.* at n. 9.

The Court does not find the fact that *Brown* was based on statutory warranty form deeds a distinguishable factor from the Category 5 deeds because the language is essentially the same. Rather, the Court finds it significant that *Brown* held that the use of the term "right of way" in the descriptive clause of the deeds, as opposed to the granting or habendum clauses, does not create an easement. Furthermore, as in *Brown,* the fact that one of the deeds in Category 5 contains language requiring the Railroad to put in wagon road crossings and a passageway for calves under the road bed can indicate an intent to grant fee title to the Railroad, yet retain an easement across the Railroad property for the grantor. J.App. 14.

As stated in this Court's prior decision, finding the deeds in Category 5 to have granted fee title is consistent with Idaho's fee simple presumption statute, Idaho Code § 5–604, a conclusion also reached by the court in *C & G. C & G,* 25 P.3d at 81. It is also consistent with the Idaho Supreme Court's refusal to recognize the strip and gore policy in a railroad deed construction case based on its reluctance to do so in light of the legislature's mandate favoring fee simple title. *See id.* Finally, it is consistent with the Idaho Supreme Court's recognition that railroads can acquire fee simple title to land for both operating and non-operating purposes as well as its holding that a deed granting, selling, and conveying a described piece of land to have and hold forever, without any indication of intention of reversion, conveys fee simple absolute title. *See Union Pacific Railroad Company v. Ethington Family Trust,* 137 Idaho 435, 50 P.3d 450, 453 (2002).

**C. Application of *Neider* to Category 6 Deeds (Approximately 24 parcels)**

■ The Category 6 deeds grant "real estate" in the granting clause, do not mention right of way in the descriptive clause, but state the following in the habendum clause:

TO HAVE AND TO HOLD all and singular the tenements, hereditaments and appurtenances as a perpetual right-of-way for said second party's Rail Way Line unto the said party of the second part and to its successors and assigns forever.

J.App. 5.

■ These deeds obviously differs from the Category 5 deeds in that the term "right of way" appears in the habendum clause. However, as stated above, the granting clause prevails over an inconsistent habendum clause. *Long,* 133 N.E.2d at 570–71. Furthermore, the Court does not believe that *C & G* dictates that the mere presence of the term right

of way in habendum clause indicates an intent to grant an easement. While the court in *C & G* said that absence of the words "right of way" in the habendum clause indicated an intent to convey fee title, it did not state that the mere presence of the words necessarily indicated an intent to convey an easement. Rather, it noted that there are two meanings to the term. *Id.* at 80. The Court concludes that in the absence of the term "right of way" in the granting clause or any limiting language regarding purpose or reversion, the language is merely descriptive of the purpose for which the property was conveyed. Indeed, the land was conveyed together with "reversion and reversions." J.App. 5.

■ As observed in *Brown*, there is no question but that the Railroad acquired the property for railroad purposes. "Identifying the purpose of the conveyance, however, does not resolve the issue at hand because a railroad can own rights of way in fee simple or as easements." *Brown*, 924 P.2d at 913. Accordingly, the Court finds that the Category 6 deeds conveyed fee title.

### D. Application of *Neider* to Category 8 Deed (One parcel)

■ The deed at issue in this category provides that the landowner granted to the Railroad "a strip of land for a right of way...." Next, the deed contains a legal description of the property with a final sentence describing the use to which the property would be put:

> The said Strip of land is to be used by the said Railway Company for a right of way for the said Railway and for all and every purpose necessary to be used in connection with the running and operation of the said Railway.

J.App. 6

Unlike the *Neider* deed, however, there is no language stating that the deed would be null and void if the Railroad did not establish and maintain the property for right of way, station, sidetrack, and warehouse purposes or that the property would revert to the grantor. While the language in this Category 8 deed suggests a possible intent to create an easement, the presence of the term "right of way" in the granting and descriptive clause does not always lead to a finding of an easement.

The deed at issue here is similar to a deed discussed in a recent Ninth Circuit decision which was applying Washington law:

> Here the term "right of way" appears in the granting clause as well as in the legal description. In this sense, the Hilchkanum deed suggests a possible intent to create only an easement in a way the deeds at issue in *Brown* did not. However, neither the granting nor the habendum clauses contains language *clearly limiting the use of the land to a specific purpose.* In virtually all cases where Washington courts have found only an easement, the granting or the habendum clauses contained such language.... Without such additional language, the use of the term "right of way" merely "begs the question" since a railroad could own a right of way either as an easement or in fee. *Brown*, 924 P.2d at 914....

The Hilchkanum deed contained precatory language indicating that the parties expected that the right of way would be used to construct and operate a railroad, but it did not actually condition the conveyance on such use. *Brown*, 924 P.2d at 912–13. Also, in *Brown*, the court noted that identifying the general purpose of a conveyance, i.e., for railroad purposes, is not helpful in discerning intent because it does not clarify whether the right of way is an easement or a fee. *Id.* at 913.

*King County v. Rasmussen,* 299 F.3d 1077, 1086 (9th Cir.2002) (emphasis added).

Similarly, the West Virginia Supreme Court found that the deed in question conveyed fee simple title rather than an easement where (1) the granting clause granted "a strip of land for a right-of-way" rather than the right to use the land; and (2) the habendum clause gave the railroad the right "[t]o have and to hold said strip of land unto said Railway for a right of way, its successors and assigns forever." *Grill v. West Virginia Railroad Maintenance Authority,* 188 W.Va. 284, 423 S.E.2d 893, 896–97 (1992). The court reasoned that the words "right-of-way" were merely descriptive and not a limitation of the grant.

More recently, the Court of Appeals for Indiana reached the same conclusion where the deed conveyed a strip of land for railroad purposes "forever." *See Poznic v. Porter County Development Corp.,* 779 N.E.2d 1185 (Ind.App.2002). The court emphasized the conveyance of a strip of land rather than just a right, the use of the word "forever," and the lack of any limiting language such as a provision that the deed would be void if it were not used for railroad purposes. *Id.* at 1190–91.

Like the deeds in *Rasmussen, Grill,* and *Poznic,* the Category 8 deed did not contain language "clearly limiting" or "explicitly restricting" the grant to Railroad purposes or providing for a reversion to the grantor if the Railroad ceased to operate. Also, like those deeds, the Category 8 deed conveyed to the Railroad, its heirs, and assigns "forever," a "temporal descriptor more consistent with the conveyance of a fee than of an easement." *Tazian v. Cline,* 686 N.E.2d 95, 101 (Ind.1997). Accordingly, the Court finds that the Category 8 deed conveyed fee title to the Railroad.

### E. Conclusion

*Neider* does not require a finding that the deeds in Categories 5, 6, and 8 conveyed easements. The Court finds, consistent with its findings in its earlier Memorandum Decision, that the deeds in all of these categories conveyed fee title to the Railroad.

### PLAINTIFFS' CROSS MOTION FOR SUMMARY JUDGMENT CATE-GORIES 5, 6, AND 8

Plaintiffs' cross motion and response to Defendant's summary judgment motion is premised on the contention that *Neider* is controlling and dictates that the appearance of "right of way" language *anywhere* in the deed indicates intent to convey an easement only. Based on the Court's finding on Defendant's Motion for Partial Summary Judgment that the deeds in Categories 5, 6, and 8 conveyed fee title, Plaintiffs' Cross Motion for Summary Judgment is denied with respect to those categories.

### PLAINTIFFS' MOTION FOR RECONSIDERATION

Plaintiffs request the Court to reconsider its decision that the deeds in Categories 2 and 3 conveyed a fee simple determinable or fee simple conveyance with possibility of reverter. Plaintiffs contend that in light of *Neider,* these deeds should be construed as having conveyed an easement only. More specifically, Plaintiffs contend that the language of the Category 2 and 3 deeds contain language substantially similar to the language of the Bow deed in *Neider* which was held to convey an easement.

On the other hand, Defendant contends that Plaintiffs' motion is premised on the erroneous assumption that a fee simple subject to a condition subsequent (the argument of the Appellant in *Neider)* is the

same as a fee simple determinable. Defendant reasons that because *Neider* was deciding between an easement and a fee simple subject to a condition subsequent, its holding does not apply to what is in this case a decision between an easement and a fee simple determinable.

In its Memorandum Decision, this Court addressed the issue of whether the deeds in Categories 2 and 3 conveyed fee simple title or merely a fee simple determinable. It did not address the issue of fee title vs. easement. The Court concluded that because the deeds contained reverter clauses to take effect if the Railroad ceased using the land for railway purposes, the deeds conveyed fee simple determinable or a fee simple conveyance with a possibility of reverter as opposed to fee simple absolute. The Court ultimately found that the interests conveyed to the Railroad in these deeds terminated upon cessation of the corridor for railroad use and reverted to the grantors. This ruling was not appealed.

After the Court's decision, the parties entered into at least three stipulations regarding outstanding issues pertaining to the original conveyances to the railroad under Categories 2 and 3. The parties stipulated (1) that the reversionary interests retained by the original grantors had not been extinguished under Idaho law; (2) that the owners of the reversionary interests as of the alleged date of taking are properly included as class members in this action; and (3) to the identity of the owners of the reversionary interests. *See Joint Stipulation,* ¶ 5 (dated April 5, 2002) (Docket No. 92); *Joint Stipulations Regarding Category 2 and 3 Parcels* (dated August 8, 2002) (Docket No. 97) and *Joint Status Report, Stipulations, and Proposed Schedule* (dated Nov. 8, 2002) (Docket No. 101); and *Id.,* respectively. Prior to entering into these stipulations, counsel had gone to considerable effort to identify the parties who would be entitled to any reversionary interest. In moving for reconsideration of the Court's earlier decision, Plaintiffs' have not sought to withdraw from the stipulations.

It appears to the Court that regardless of whether the deeds are categorized conveying a fee simple determinable, fee simple subject to a condition subsequent, or as creating an easement, the result is the same—the interest in the land that had been conveyed to the Railroad reverts to the landowner. The only remaining matter would be determination of just compensation.

While Plaintiff's counsel may have some sound reason it is now necessary to revisit this area in view of the stipulations and the fact no appeal was ever filed in this issue, it is far from obvious to the Court. The Court notes that at oral argument, Plaintiffs referred to the potential issue of who would constitute the proper class members upon extinguishment of an easement—the heirs of the grantors or the adjoining landowners. Counsel observed that the law is quite mixed. However, the stipulations seem to have resolved this issue.

Since the Court's finding on Categories 2 and 3 was never appealed, and the parties stipulated that all issues regarding the original conveyances to the Railroad in Categories 2 and 3 had concluded, the Court will deny the motion for reconsideration. However, the Court will grant Plaintiffs' counsel until September 8, 2006, to submit a memorandum explaining why they should be allowed to withdraw from the stipulation and why a determination on this easement issue would advance the interests of the parties in this litigation.

## DEFENDANT'S MOTION FOR CLARIFICATION CATEGORIES 10, 12, AND 13 (Adverse Possession)

### A. Background

Based on the briefing of the parties pertaining to these categories, the Court

assumed for the purposes of its decision that the Railroad had acquired *some* interest by adverse possession and proceeded to consider whether that interest was an easement or fee title.[4] In its Memorandum Decision, this Court found that the Railroad had acquired fee title.

The Federal Circuit found that the stipulation of the parties to treat these properties for purposes of litigation as having been acquired by adverse possession "was not a concession that the requirements of adverse possession had been met." *Hash,* 403 F.3d at 1322. The Federal Circuit further noted that the great weight of authority from other jurisdictions is that adverse occupancy of a railroad right-of-way does not confer any greater interest in the land than that of a right-of-way easement. *Id.* Citing *Idaho Forest Indus., Inc. v. Hayden Lake Watershed Improvement Dist.,* 112 Idaho 512, 733 P.2d 733, 736 (1987), it found that position consistent with Idaho's rule that any acquired prescriptive right is limited by the purpose for which it was acquired and the use to which it was put during the prescriptive period. *Id.* The Federal Circuit concluded that Defendant had not met the burden of establishing adverse possession to the fee to the underlying land in addition to the right-of-way over the land. Accordingly, it reversed this Court's judgment that the Railroad acquired fee title to the underlying lands in Categories 10, 12, and 13. Notably, the Federal Circuit did not reverse and remand.

The Defendant contends that the Federal Circuit's reversal leaves open the question of what other interest, if any, the Railroad had acquired by adverse possession. In essence, the Defendant contends that it should be able to present evidence on the adverse possession issue.

Plaintiffs contend that the law of the case mandates that as a matter of law the Railroad obtained only an easement by prescription. Alternatively, Plaintiffs contend that if the Federal Circuit did not decide the issue as a matter of law, then Defendant's request to put on evidence regarding obtaining fee title by adverse possession should be denied because it failed to do so in the case in chief.

Plaintiffs note that the parties argued their positions before this Court on the issue of fee vs. easement by adverse possession as a matter of law without presenting any evidence. Plaintiffs further note that they first observed at oral argument that the Defendant had not submitted any evidence to satisfy the requisite elements of adverse possession under Idaho law. On appeal, Plaintiffs raised two issues as separate grounds for holding that the Railroad could only have acquired an easement: (1) whether a railroad can obtain fee title to a right of way by claiming adverse possession without satisfying the statutory requirements necessary to establish fee title by adverse possession, and (2) whether the interest obtained in the right of way by a railroad through prescription is in any event limited to an easement.

On the other hand, the Defendant framed the issue as with respect to rights of way obtained by the Railroad by adverse possession, whether the Railroad obtained fee simple ownership in the rights of way. Rather than raise the argument that the Federal Circuit should refuse to address the insufficiency of the evidence argument for failing to timely raise it in this Court, Plaintiffs contend that Defendant simply requested a remand for presentation of evidence should the Federal Circuit determine that it had not establish

---

4. The parties previously stipulated that the parcels in Categories 12 and 13 would be subject to the Court's ruling on Category 10.

Joint Stipulation, ¶ 4 (Apr. 5, 2002)(Docket No. 92).

the required elements of adverse possession.[5] Nonetheless, the Federal Circuit, while finding the evidence insufficient, reversed this Court's determination that the Railroad acquired fee title and did not remand for further proceedings despite remanding other issues. The Defendant did not petition for rehearing on the Category 10 portion of the Federal Circuit's decision.

## B. Applicable Law

The parties have each cited cases from the Federal Circuit as well as other circuits regarding law of the case and the rule of mandate. Indeed, both doctrines appear to be described in much the same way as in a recent Ninth Circuit case:

> According to the law of the case doctrine, on remand a lower court is bound to follow the appellate court's decision as to issues "decided explicitly or by necessary implication." *Liberty Mut. Ins. Co. v. EEOC,* 691 F.2d 438, 441 (9th Cir. 1982). However, the lower court is so bound only as to those issues addressed by the appellate court. *See United States v. Cote,* 51 F.3d 178, 181 (9th Cir.1995) (quoting *Luckey v. Miller,* 929 F.2d 618, 621 (11th Cir.1991)). . . .
>
> The lower court must also adhere to the rule of mandate. "The rule of mandate is similar to, but broader than, the law of the case doctrine." *Cote,* 51 F.3d at 181 (citing *Herrington v. County of Sonoma,* 12 F.3d 901, 904 (9th Cir.1993)). The rule of mandate requires a lower court to act on the mandate of an appellate court, without variance or examination, only execution. *In re Sanford Fork & Tool Co.,* 160 U.S. 247, 255, 16 S.Ct. 291, 40 L.Ed. 414 (1895); accord

*Stamper v. Baskerville,* 724 F.2d 1106, 1107 (4th Cir.1984).

*United States v. Garcia–Beltran,* 443 F.3d 1126, 1129–30 (9th Cir.2006).

 In other words, the doctrine of law of the case requires that the decision of an appellate court on a legal issue must be followed in all subsequent proceedings in the same case and bars only those issues actually considered and decided by the trial court. *United States v. Cote,* 51 F.3d 178, 181 (9th Cir.1995) (citations omitted) (construing mandate where reversal did not include a remand order). On the other hand, the rule of mandate precludes a district court from refusing to dismiss a case when the mandate requires it, from revisiting any final determinations unless the mandate allows it, and from engaging in any proceedings inconsistent with a reversal. *Id.* (citations omitted). Once a mandate issues, the district court assumes jurisdiction and may consider and decide any matters not addressed by the mandate. *Id.* at 182. In order to determine what matters have been left open by the mandate, the court may consider the opinion of the appellate court to ascertain its intent. *Id.* Reversal without a remand order does not necessarily preclude a new trial. *Id.*

A Supreme Court case addressing the rule of mandate over 100 years ago contained similar language and is still cited by courts today, as it was in the following Ninth Circuit case:

> In the seminal case on the subject, *In re Sanford Fork & Tool Co.,* the Supreme Court emphasized that, in addition to the mandate itself, "[t]he opinion by this court at the time of rendering its decree may be consulted to ascertain what was

---

5. A review of Defendant's appellate brief reveals that it did, in fact, argue that Plaintiffs were challenging the district court's ruling on grounds not raised in their briefs or ruled

upon. Defendant specifically argued, "Thus, this issue is not properly before this Court and should not be addressed in this appeal." Docket No. 148–4, p. 5.

intended by its mandate····" 160 U.S. 247, 256, 16 S.Ct. 291, 40 L.Ed. 414 (1895). The Court added that it is important, in determining "what was heard and decided" by the appellate court, to bear in mind the "settled practice" of courts with respect to the applicable substantive law. 160 U.S. at 256, 16 S.Ct. 291, 40 L.Ed. 414. Thus, in construing a mandate, the lower court may consider the opinion the mandate purports to enforce as well as the procedural posture and substantive law from which it arises. As the talismanic language from Sanford Fork makes clear, the ultimate task is to distinguish matters that have been decided on appeal, and are therefore beyond the jurisdiction of the lower court, from matters that have not. . . .

In most cases, enforcing the mandate is uncontroversial because its terms are plain and they square both with the underlying opinion and the procedural history of the case. Under these circumstances, the lower court must execute the mandate without hesitation. However, as the First Circuit has observed, "[o]n remand, courts are often confronted with issues that were never considered by the remanding court." (Citations omitted.) In such cases, "[b]roadly speaking, mandates require respect for what the higher court decided, not for what it did not decide." (Citations omitted.)

*United States v. Kellington*, 217 F.3d 1084, 1093 (9th Cir.2000). *See also Exxon Chemical Patents, Inc. v. The Lubrizol Corp.*, 137 F.3d 1475, 1483 (Fed.Cir.), *cert. denied*, 525 U.S. 877, 119 S.Ct. 181, 142 L.Ed.2d 148 (1998) (district court should look also to the language of the appellate court's opinion).

## C. Discussion

While it is clear that the courts and the parties generally agree on the rules of law addressed above, it is equally clear that the parties do not agree on what issues were decided or on the interpretation or scope of the mandate.

### 1. Law of the Case

■ A review of the Federal Circuit decision reveals that it made the following points:

· The stipulation of the parties was not a stipulation that both the underlying fee and the overlying Railroad belonged to the Railroad;

· The stipulation was not a concession that the requirements of adverse possession had been met.

· There was no evidence that the requirements of I.C. § 5–210 regarding the material facts of adverse possession were met.

· The law of adverse possession does not require that the property owner be deprived of greater rights than those that are used by the adverse possessor.

· Adverse occupancy of a right-of-way does not confer on the railway any greater interest in the land than that of a right-of-way easement.

· Under Idaho law, any right gained by prescription is confined to the right as exercised during the prescriptive period and limited by the purpose for which it is acquired and the use to which it is put.

· Defendant has not met the burden of establishing compliance with the law of adverse possession as applied to the fee underlying the land, as well as for the right-of-way traversing the land, by clear and satisfactory evidence.

· The judgment that the Railroad acquired fee title to the underlying lands in Categories 10, 12, and 13 is reversed.

Plaintiffs argue that by finding that Defendant did not meet its burden of proving

adverse possession resulting in fee title, the Federal Circuit by implication found that the Railroad acquired only an easement.

The Federal Circuit cited what it referred to as the great weight of authority to the effect that adverse occupancy of a right-of-way does not confer any greater interest than that of a right-of-way easement. A review of those cases is necessary to fully appreciate the distinctions made by the Federal Circuit.

In *Maryland & Pennsylvania R.R. Co. v. Mercantile–Safe Deposit & Trust*, 224 Md. 34, 166 A.2d 247, 249 (1960), the court was faced with a plaintiff with "good" paper title to land and a railroad without documentary evidence claiming adverse possession based on evidence of use for a railway right-of-way since 1880. The court relied on cases from several jurisdictions and general policy considerations and sided with the "weight of authority" that the railroad had acquired an easement only.

In *Wheeling Stamping Co. v. Warwood Land Co.*, 186 W.Va. 255, 412 S.E.2d 253 (1991), the court likewise addressed the issue of whether the railroad held an easement or an estate in fee in the absence of a written document of conveyance. In this case, railroad records referred to a "release." The court determined that absent a recorded document, the railroad only acquired a right-of-way easement by prescription having met the necessary elements set forth in an earlier case: "The open, continuous and uninterrupted use of a road over the land of another, under *bona fide* claim of right, and without objection from the owner, for a period of ten years .... (citation omitted)." *Id.* at 257 n. 2. The court was persuaded by the reasoning of *Maryland & Pennsylvania* that "the nature of the user by the railroad requires no more than an easement in the right of way and does not, therefore, amount to an occupancy adverse to the claim of another to the fee." *Id.* at 249. It concluded that the use of the property for railroad purposes defined the parameters of the easement to railroad purposes.

Finally, in *Strother v. Bootheel Rail Properties, Inc.*, 66 S.W.3d 751, 754 (Mo. Ct.App.2001), the court addressed the issue of whether the railroad had acquired fee title or an easement. While noting that a railroad could hold property in fee without restriction, it further noted that a railroad acquired only an easement if the property was acquired for right-of-way purposes by condemnation, voluntary grant, or conveyance in fee. *Id.* at 753. Defendant argued that its predecessor in title, the railroad, had operated and maintained a railroad for 90 years on the subject property and thereby acquired it by adverse possession rather than condemnation, voluntary grant, or conveyance in fee. Relying on both *Wheeling* and *Maryland & Pennsylvania*, in the absence of a recorded document, the court concluded that the railroad acquired a right of way easement by prescription. The court distinguished acquisition of title by adverse possession from a prescriptive easement as follows:

> Although akin to acquisition of title to real estate by adverse possession, "a prescriptive easement is defined solely by its use during the prescriptive period." *Jacobs v. Roschevitz*, 20 S.W.3d 598, 600 (Mo.App.2000). "[I]t is not necessary for one to intend to violate the owner's rights. It is sufficient that one uses land without regard to any right of the owner to prohibit the use." *Umphres v. J.R. Mayer Enterprises, Inc.*, 889 S.W.2d 86, 89 (Mo.App.1994). It is established by "use which is shown to have been continuous, uninterrupted, visible, and adverse for a period of ten years." *Speer v. Carr*, 429 S.W.2d 266, 268 (Mo.1968). "A prescriptive right, where there is no color of title, cannot

be any broader than the claim which the user evidences...." *Pollnow v. State Dept. of Natural Resources,* 88 Wis.2d 350, 276 N.W.2d 738, 742 (1979) (quoting *Consumers' Gas Trust Co. v. American Plate Glass Co.,* 162 Ind. 393, 68 N.E. 1020, 1021 (1903)).

Interestingly, *Strother* relies on *Boyles v. Missouri Friends of Wabash Trace Nature,* 981 S.W.2d 644 (Mo.App.1998), for the proposition that acquisition of a right-of-way by a railroad results in only an easement. *Boyles,* in turn relied on the Missouri Constitution, Article I, section 26 which provided in relevant part that "the fee of land taken for railroad purposes without consent of the owner thereof shall remain in such owner subject to the use for which it is taken" as well as other Missouri cases citing statutes specifically directed at controlling the nature and extent of a railroad's interest in real estate. *See, e.g., Quinn v. St. Louis–San Francisco Ry. Co.,* 439 S.W.2d 533, 534–35 (Mo. 1968) (en banc) (discussing the legislative policy established in Missouri arising from factors peculiar to railroads). Obviously, the Missouri constitution and statutes were driving forces in the decisions of the Missouri courts and are not pertinent to Idaho.

The Federal Circuit observed that the authority cited in the above cases was consistent with Idaho's "long established rule" on rights acquired by prescription as described in *Idaho Forest Industries, Inc. v. Hayden Lake Watershed Improvement District,* 112 Idaho 512, 733 P.2d 733, 736 (1987). In none of these cases, however, was the question of payment of taxes or an adverse possession statute discussed. It is unclear whether the courts would have found fee title if payment of taxes and compliance with adverse possession statutes had been proven.

The Idaho Supreme Court recently had an opportunity to discuss the differences between adverse possession and prescriptive easement after the Federal Circuit's decision was filed. *See Luce v. Marble,* 142 Idaho 264, 127 P.3d 167 (2005). In describing the elements of adverse possession, the court indicated that the statutory requirements of § I.C. 5–210 are in addition to certain non-statutory requirements:

> Oral claims for adverse possession are governed by Idaho Code § 5–210. This section requires that the land being claimed have been enclosed or that the land being claimed be cultivated or improved, that the possession be for a period of five years and that the adverse possessor pay all taxes levied and assessed on the land. The party claiming adverse possession must prove all of the essential elements of adverse possession by clear and satisfactory evidence. *Roark v. Bentley,* 139 Idaho 793, 796, 86 P.3d 507, 510 (2004). In addition to the requirements of I.C. § 5–210, this includes that the possession has been actual, open, visible, notorious, continuous and hostile to the party against whom the claim is made. *Winn v. Eaton,* 128 Idaho 670, 673, 917 P.2d 1310, 1313 (Ct. App.1996) (citing *Kolouch v. Kramer,* 120 Idaho 65, 67–68, 813 P.2d 876, 878–79 (1991)).

*Id.* at 175. Unless one of several exceptions applies, " § 5–210 requires actual payment of property taxes, levied and assessed, with regard to the disputed property." *Id.* The law presumes the adverse possessor paid taxes on a disputed parcel, thereby satisfying the tax payment requirement of the statute, unless the land was assessed under a metes and bounds description or there is evidence that the adverse possessor did not pay taxes. *Id.* Even uncontradicted testimony that the adverse possessor paid taxes is sufficient to satisfy the statute if the tax records are inconclusive. *Id.*

On the other hand, the court described the legal requirements of a prescriptive easement as follows:

> "It is well established in this jurisdiction that an easement is the right to use the land of another for a specific purpose that is not inconsistent with the general use of the property by the owner." *Abbott v. Nampa School Dist. No. 131*, 119 Idaho 544, 548, 808 P.2d 1289, 1293 (1991). To establish a prescriptive easement, the claimant must prove, by clear and convincing evidence, open, notorious, continuous, uninterrupted use, under a claim of right, with the knowledge of the servient estate owner for five years. See, e.g., *Wood v. Hoglund*, 131 Idaho 700, 702, 963 P.2d 383, 385 (1998).

*Id.* at 176. The court concluded that the plaintiff could not prevail on her adverse possession claim because she presented no evidence of tax payments. It further concluded that she could not prevail on her prescriptive easement claim because an easement over an entire parcel would be more akin to a conveyance of ownership. *Id.* at 177.

In reviewing the Federal Circuit's decision in light of the distinctions between adverse possession and prescriptive easement, it becomes apparent that while the Federal Circuit made many points, it decided only one issue. That one issue was whether Defendant acquired adverse possession based on the so-called stipulation.

The Federal Circuit noted that Plaintiffs suggested that the adverse possessor may have acquired a prescriptive easement and opined that the weight of authority seems to hold that railroads get only a prescriptive easement rather than fee title to undocumented rights-of-way. However, it did not so find and indeed could not have so found given that there had been no evidence presented before this Court in support of either theory. Just as all essential elements of adverse possession are required to be proven by clear and satisfactory evidence, all elements of prescriptive easement must be proven by clear and convincing evidence. *Luce*, 127 P.3d at 175, 176. Therefore, because such evidence was not even presented much less proven, it is not the law of the case that Defendant acquired a prescriptive easement.

### 2. Rule of Mandate

As stated above, in construing a mandate, the lower court may consider the opinion the mandate purports to enforce as well as the procedural posture and substantive law from which it arises. *Kellington*, 217 F.3d at 1093. In this case, the elements of adverse possession were not litigated. The issue before the Federal Circuit went beyond the issue decided in this Court's decision and reached the sufficiency of the stipulation. Therefore, the Court will construe the mandate as being limited to the issue of the sufficiency of the stipulation and not as precluding presentation of evidence on the issue of adverse possession and/or prescriptive easement. The Federal Circuit did not direct entry of judgment in favor on Plaintiffs. Allowing Defendant the opportunity to prove adverse possession would not affect the Federal Circuit's decision that the stipulation was not sufficient. Nor would allowing evidence on prescriptive easement or acquisition of any other type of property interest.

### D. Conclusion

Neither the law of the case nor the rule of mandate precludes the Court from taking evidence on the issues of adverse possession, prescriptive easement, or any other issue not inconsistent with the Federal Circuit's holding that the Railroad did not acquire adverse possession by virtue of the stipulation categorizing the properties for

which no documentation exists. The question of whether the Railroad acquired an interest by adverse possession, and, if so, the nature of that interest, are still open questions to be litigated before this Court.

**ORDER**

NOW THEREFORE IT IS HEREBY ORDERED as follows:

1. Defendant's Motion for Partial Summary Judgment (Docket No. 122) is GRANTED with respect to Categories 5, 6, 8, 14, and 15.

2. Plaintiffs' Cross Motion for Partial Summary Judgment (Docket No. 127) is DENIED with respect to Categories 5, 6, and 8.

3. Plaintiffs' Motion for Reconsideration (Docket No. 135) is DENIED. However, Plaintiffs shall have until September 8, 2006 in which to submit a supplemental memorandum as described above.

4. Defendant's Motion for Clarification (Docket No. 145) is GRANTED.